# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
September 12, 2000 Session

## STATE OF TENNESSEE v. MICHAEL G. UPSHAW

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03610     James C. Beasley, Jr., Judge**

---

**No. W1999-00777-CCA-R3-CD - Filed January 11, 2001**

---

THOMAS T. WOODALL, J., concurring.

　　While agreeing with the majority opinion in section IV that criminally negligent homicide should not have been charged to the jury under State v. Burns, 6 S.W.3d 453 (Tenn. 1999), I dissent to the remaining portion of section IV. I agree that voluntary manslaughter is a lesser-included offense of second degree murder, but under Burns, I feel that evidence does not exist that reasonable minds could accept as to voluntary manslaughter as opposed to second degree murder. The majority opinion relies entirely upon portions of Defendant's pre-trial statement in support of its conclusion that there is evidence to warrant a charge of voluntary manslaughter. The following excerpts from the Defendant's pre-trial statement contain the information regarding the circumstances of the shooting:

> Q: Michael, on Monday, November 3, 1997, at approximately 8:00 p.m., did you shoot a male white at Percy Delta Rd.?
>
> A: Yes, sir, by mistake.
>
> * * *
>
> Q: Did the white male that was shot have a gun?
>
> A: He drew for somethin, [sic] that's what was had me paranoid.
>
> * * *
>
> Q: Michael, why did you shoot the male white?
>
> A: Cause Mario said he had ran off with his money and then he faked like he was gone [sic] shoot first.

Q:      Michael, in your own words, tell me what happened before, during and after the shooting.

A:      Mario came picked me up at the house, I jumped in the car with Mario Merritt and Eric Jones and uh Vyron and they went round to Delta and Percy and that's when we saw the white man and the girl, and Mario pulled around the car and tried to block the white man in and Mario Merritt asked them what was up with his money? Me and Vyron got out the car, uh, that's when the white man looked like he was fixin [sic] to pull up his gun, I shot the gun at the red car window and we got back in the car. I got in the backseat and Vyron got in the front and Mario drove off and got his gun back from me. Mario took me home and dropped me off.

I respectfully disagree that the fact that Defendant mentioned in his statement that "Mario" stated that the victim had ran off with Mario's money is sufficient proof of "adequate provocation" to justify a conclusion that reasonable minds could accept a conviction of voluntary manslaughter. Defendant's statement, in effect, was that the Defendant did not raise his gun to shoot at the victim until the victim appeared to be going for a weapon, in essence, a shooting by the Defendant in self-defense.

I would hold that, as with the lesser-included offense of criminally negligent homicide, the proof did not justify a charge of voluntary manslaughter.

_____
THOMAS T. WOODALL, JUDGE

-2-